UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

VELMA COVINGTON,                              CASE NO. 1:10-cv-00252-MP -GRJ

      Plaintiff,

v.

SAILORMEN, INC.
d/b/a POPEYES CHICKEN AND BISCUITS,
      Defendant.
_____/

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

Defendant Sailormen, Inc. d/b/a Popeyes Chicken and Biscuits ("Defendant") responds in opposition to Plaintiff Velma Covington's ("Plaintiff") Motion to Compel and for Sanctions (the "Motion").  Plaintiff is not entitled to any of the relief she seeks and, in light of Plaintiff's refusal to engage in good faith discussions with Defendant prior to filing the Motion, Defendant is entitled to recover its expenses incurred in preparing the instant Response.

## MEMORANDUM OF LAW

### I.     Summary of the Argument

In her Motion, Plaintiff takes issue with Defendant's objections to Plaintiff's First Interrogatories and First Request to Produce (the "requests") and asks the Court to strike or deem as waived Defendant's "General Objections" as well as Defendant's attorney client and/or work product objections.  Plaintiff also asks the Court to compel Defendant to amend its timely-served discovery responses without asserting any additional objections to the

requests.  Finally, Plaintiff asks the Court to award her fees and costs associated with the preparation and filing of her Motion, wrongly claiming that she engaged in a good faith effort to resolve her disputes with Defendant's discovery responses prior to filing her Motion.[1]

There is no basis for Plaintiff's Motion because Defendant's objections to Plaintiff's discovery are proper.  More importantly, however, Plaintiff's Motion should never have been filed and has caused unnecessary expenditure of judicial resources and added expense to Defendant because Plaintiff failed to make a good faith effort to resolve the matters raised in the Motion without court intervention, and declined to respond to Defendant's repeated and reasonable requests that the parties engage in a discussion in an attempt to resolve the dispute.

Plaintiff's Motion misleads this Court regarding Plaintiff's claimed good faith effort to resolve the issues raised in the Motion prior to filing, as the only concern Plaintiff raised with Defendant prior to filing was the validity of the "General Objections" section in Defendant's discovery responses and Defendant's objection to request #8 of Plaintiff's First Request to Produce ("RFP #8").  At no time prior to filing the Motion did Plaintiff express a concern with any of Defendant's specific responses (apart from RFP #8) and at no time prior to filing the Motion did Plaintiff cite to the order in the *Mann v. Island Resorts Development, Inc.* case, which Plaintiff claims establishes that partial objections followed by substantive

---

[1] Although Plaintiff titles her Motion as one for "Sanctions," it does not appear that Plaintiff is seeking sanctions, rather, she appears to be seeking expenses pursuant to Rule 37(a)(5) of the Federal Rules of Civil Procedure.  As Plaintiff has not alleged, and cannot establish, that Defendant failed to comply with a court order, failed to disclose or supplement an earlier response, failed to admit, failed to attend its own deposition, failed to serve answers to interrogatories, failed to respond to a request for inspection, failed to provide electronically stored information, or failed to participate in framing a discovery plan, there is no basis for an award of "sanctions" under Rule 37(b) – (f).

PD.5061266.1

answers to discovery requests are invalid, a contention with which Defendant disagrees. Finally, at no time prior to filing the Motion did Plaintiff express any concern about the timing of production of Defendant's privilege log.

Plaintiff's unreasonable refusal to engage in a conversation with Defendant regarding resolution of the discovery dispute continued after the Motion was filed, as Defendant has made no less than three attempts post-filing to reach a compromise with Plaintiff, to no avail. As Plaintiff's Motion is without merit and Plaintiff is responsible for the needless involvement of this Court, Defendant requests fees and expenses for its time spent opposing Plaintiff's Motion.

**II.    Procedural Background & Defendant's Good Faith Effort to Resolve the Dispute.**

Pursuant to an agreement with Plaintiff's counsel extending the time for Defendant's responses, Defendant served responses and objections to Plaintiff's First Interrogatories and First Request to Produce on March 28, 2011.  On April 5, 2011, approximately thirty minutes before midnight, Plaintiff emailed Defendant requesting the location of documents responsive to Plaintiff's discovery requests and also requesting Defendant's privilege log. *Exhibit A*.  Defendant responded on Thursday, April 7, 2011,[2] stating that the documents would be ready for review on the next day, or at the latest by Monday, April 11, 2011, and that Defendant's privilege log would accompany the documents.  *Exhibit B.*  Plaintiff did not respond to that email or otherwise indicate that service of Defendant's privilege log along with its document production would cause Plaintiff any prejudice or would be the subject of

a motion to compel.

Later that afternoon, Plaintiff's counsel sent Defendant's counsel several emails regarding various discovery matters in the case.  In one email, Plaintiff's counsel requested a blanket withdrawal of all of Defendant's "General Objections" that were set forth at the beginning of Defendant's discovery responses.  *Exhibit C.*  Plaintiff cited to two nonbinding cases and one Eleventh Circuit case for the proposition that "general objections" are improper.  Plaintiff provided Defendant with the unreasonably short period of one business day to withdraw its "General Objections" or else Plaintiff would move to compel.  *Exhibit C*. Plaintiff did not explain what, exactly, Plaintiff would move the Court to compel and, in fact, it seemed to Defendant that Plaintiff was seeking relief that would more appropriately be the subject of a motion to strike.  In a second email, Plaintiff's counsel likewise requested the withdrawal of Defendant's objection to Plaintiff's RFP # 8.  *Exhibit D.*  Finally, in a third email, Plaintiff reminded Defendant that Plaintiff would not pay the cost for copies of Defendant's responsive documents without prior written approval,[3] thereby ensuring that Plaintiff would not review Defendant's document production prior to Plaintiff's arbitrary and

---

[2]  Defendant's counsel was out of the office on April 6, 2011 and did not receive the email until April 7, 2011. Plaintiff's counsel sent a follow-up email on April 7, 2011 stating, "[a]ny idea when I can get the below" to which Defendant's counsel immediately replied.  *Exhibit B.*

[3] In connection with the service of Plaintiff's Initial Rule 26 disclosures, Plaintiff's counsel requested that the parties offset each others' document production costs and offered to produce Plaintiff's documents without invoicing Defendant in exchange for the same courtesy from Defendant.  Defendant agreed, to the extent that Defendant's document production did not exceed the page count of Plaintiff's document production. Accordingly, Defendant indicated that Defendant would only invoice Plaintiff for the number of pages in its document production that exceeded Plaintiff's production.  *Exhibit F.*  As a result of this prior exchange, and in light of Plaintiff's April 7th instruction that Plaintiff would not pay for document production without prior written approval, Defendant informed Plaintiff that Defendant's documents were ready for inspection or copying, and asked for Plaintiff's instruction regarding whether Plaintiff would inspect the documents or would prefer to receive a copy of the documents at a cost of $50.  *Exhibit G.*

4

unreasonably short one-day deadline for Defendant to acquiesce to all of Plaintiff's demands. *Exhibit E.*

Because Defendant was not convinced that the case law cited by Plaintiff in the April 7th email was applicable to a "General Objections" section preceding specific discovery responses, Defendant sent a letter to Plaintiff on April 8, 2011 requesting an opportunity to discuss Plaintiff's concerns regarding Defendant's objections.  Plaintiff flatly refused to discuss Plaintiff's concerns with Defendant's counsel.  Defendant's April 8th letter also advised Plaintiff that Defendant's document production, which was available for Plaintiff's review, might alleviate Plaintiff's concerns regarding Defendant's objections, including the response to RFP #8.  *Exhibit G.*  The letter further stated that if Plaintiff continued to have concerns about any of Defendant's objections after a review of the documents and information produced, Defendant was more than willing to maintain a dialogue in an attempt to resolve those concerns at that time.

Instead of contacting Defendant to discuss the discovery dispute, Plaintiff sent an email stating, "I understand you have refused to withdraw your general objections and your objections to request to produce number 8. As such, I'll have to do a motion to compel." *Exhibit H.*   Plaintiff filed the instant Motion on the very next day, Saturday, April 9, 2011. *Dkt. 20.*

On Monday, April 11, 2011, after being served with the Motion and reviewing the same, Defendant's counsel made a second attempt to engage Plaintiff's counsel in a discussion concerning the issues raised in the Motion in the hopes of resolving the dispute. Defendant specifically requested that Plaintiff withdraw the Motion in light of the extended

5

discovery period in the case, which was ordered on the morning of April 11th (*Dkt.* 21), and expressed disappointment with the premature nature of the Motion. *Exhibit I.* Defendant also pointed out Plaintiff's misrepresentations regarding Plaintiff's efforts to resolve the dispute in good faith. *Exhibit I.* Further, Defendant attached its privilege log (withholding two documents consisting of 2 pages) to the April 11, 2011 letter and expressed its dismay at seeing the issue raised for the first time in the Motion.

After receiving no response to the April 11th letter, Defendant reached out to Plaintiff yet again on April 14, 2011, expressing disappointment in Plaintiff's continued failure to respond to Defendant's previous requests for a simple discussion of Plaintiff's discovery concerns. *Exhibit J.* Again, Plaintiff's counsel would not schedule a time to discuss the matter with Defendant's counsel. *Exhibit K.*

Finally, after having the opportunity to review the case law cited in Plaintiff's Motion and to conduct its own research on the issues, Defendant made a final attempt to resolve the Motion with Plaintiff in order to avoid wasting judicial resources. On April 21, 2011, Defendant emailed Plaintiff explaining that although Defendant intended to dispute Plaintiff's arguments in the Motion, Defendant was willing, in the spirit of conciliation and to avoid asking the Court to micromanage the case, to amend its responses to Plaintiff's discovery requests.[4] *Exhibit L.* Defendant also advised Plaintiff in the April 21st email exchange that Defendant intended to seek reimbursement for the fees and expenses it has

---

[4] As reflected in the email exchange attached as Exhibit L, despite Plaintiff's counsel's cynical attempts, Defendant at no time "agreed" to Plaintiff's Motion or conceded that she was entitled to any of the relief she seeks in the Motion. Instead, Defendant attempted to reach a compromise with Plaintiff in an effort to provide the certainty (regarding whether Defendant has withheld any information or documents) that Plaintiff claims to desire in the Motion.

PD.5061266.1

incurred in preparing its Response to the Motion and fully explained the basis for such a request. *Exhibit L.* Not surprisingly, Plaintiff rejected Defendant's offer to meet and confer on the issues raised in the Motion, rejected Defendant's offer of a compromise, and refused to withdraw the Motion unless Defendant could "put together some funds." *Exhibit L.* As a result, Defendant is now in the unenviable position of having to recite for the Court the frustrating litany of communications with Plaintiff on these issues and having to rely on limited judicial resources to resolve this relatively minor and unnecessary discovery dispute.

## LEGAL ARGUMENT

### I.       Defendant's General Objections Are Proper

Plaintiff challenges Defendant's "General Objections," which precede Defendant's specific responses to each of Plaintiff's discovery requests, and which state that they are incorporated into the specific responses and objections that follow. Plaintiff claims that, *instead* of general "boilerplate" objections, defendant must "show specifically how each interrogatory or production request is irrelevant, overly broad, burdensome or oppressive" and cites, *e.g. Panola Land Buyers Ass'n v. Shuman*, 762 F. 2d 1550, 1559 (11th Cir. 1985) for this proposition. Defendant does not disagree with this rule of law. Accordingly, Defendant's individual responses to each of Plaintiff's discovery requests do, in fact, specially state how each interrogatory or production request is objectionable. *Exhibit M.*[5]

---

[5] For example, Plaintiff's Interrogatory # 12 requests, *inter alia*, whether Defendant contends that any other person or entity is liable for the claims in this lawsuit, and if so, the legal basis for the contention and the facts or evidence supporting that contention.

Defendant responded specifically that, "Defendant objects to this interrogatory to the extent that it calls for legal conclusion, attorney work-product and/or legal opinion as to liability in this matter, is argumentative, assumes facts not in evidence because Defendant had a legitimate and non-discriminatory basis for its employment action, and because it is duplicative of Interrogatory #10. Notwithstanding the foregoing objections, Defendant

Defendant's "General Objections" preceding its individual responses are stated for purposes of clarity for the record, and to preclude any later argument that, by not including them in Defendant's discovery responses, those "General Objections" have been waived. The "General Objections" are not included in Defendant's responses for purposes of obstructing discovery, as claimed by Plaintiff.

None of the case law cited by Plaintiff in her April 7th email, or in the Motion, specifically addresses the inclusion of "General Objections" preceding individual responses to discovery requests;[6] rather, most of the cases cited by Plaintiff address objections to individual requests that are too "general" in nature. *See Roesberg v. Johns-Mansville Corp,* 85 F.R.D. 292, 295-97 (E.D. Penn. 1980) (finding objections to 51 individual interrogatories to be too general); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.,* 198 F.R.D. 508, 510-12 (N.D. Iowa 2000) (finding individual discovery objections obstructionist); *Bank of Magnolia v. M&P Global Fin. Serv., Inc.,* 258 F.R.D. 514, 519 (S.D. Fla. 2009) (finding one RFP objection too general); *Obiajulu v. City of Rochester,* 166 F.R.D. 293, 295 (W.D. N.Y. 1996) (commenting on general nature of objections asserted in response to individual discovery requests). Several of the cases cited by Plaintiff also concern objections that are clearly obstructionist and, in many cases, were served late or not at all. *See, e.g., Josephs v.*

---

does not contend that any other individual(s), with the exception of Plaintiff, would be liable for the acts alleged in the complaint." *Exhibit M, Interrogatory #12.*

[6] Nevertheless, Defendant takes notice of other federal court rulings, none of which are binding on this Court and none of which were cited by Plaintiff, holding that "general objections" may be waived where they are raised "to the extent" such objections apply to a particular unreferenced discovery request. *See e.g. Johnson v. Kraft Foods North America, Inc.*, 238 F.R.D. 648, 651 (D. Kan. 2006)(deeming general objections waived); *Cotracom Commodity Trading Co. v. Seaboard Corp.* 1998 WL 231135, * 1 (D. Kan. May 6, 1998) (same); *Chavez v. Mercantil Commercebank, N.A.*, 2011 WL 1135005, *2 (S.D. Fla. March 28, 2011)(overruling general objections).

PD.5061266.1

*Harris Corp.,* 677 F.2d 985, 991 (3d Cir. 1982) (remanding to district court for review of, *inter alia*, defendant/appellee's failure to respond to interrogatories and, instead, simply objecting to the interrogatories as "irrelevant, oppressive, and unduly burdensome."); *Bank of Magnolia*, 258 F.R.D. at 519.

 In the Eleventh Circuit case cited by Plaintiff, *Panola Land Buyers*, the court wasn't even considering discovery responses, but, instead, was analyzing the propriety of the district court's grant of a protective order excusing Panola from responding to the defendant's discovery responses at all.  *Panola Land Buyers*, 762 F.2d at 1558-60.  Most notably, in <u>none</u> of the cases cited by Plaintiff did the responding party attempt to address the unobjectionable portions of the movant's discovery requests.

Further, it is disingenuous for Plaintiff to claim that it is "virtually impossible for the Plaintiff's counsel to know whether or not any documents or information is being withheld from the discovery responses."  *Motion*, pp.9-10.  As Plaintiff herself states in the Motion, Defendant asserted its specific objections to a number of Plaintiff's individual requests and, in response to each and every interrogatory and request to produce, also stated a substantive answer either providing the responsive and unobjectionable information requested, specifying that Defendant will produce responsive and unobjectionable documents in response, or specifying that no such documents are in Defendant's possession.  *Exhibit M*. There is no single discovery response by Defendant that simply asserts objections and refuses to provide Plaintiff information or documents.  The responses in which Defendant partially

PD.5061266.1

objected and answered to the extent unobjectionable[7] make clear the basis for the objection and what information and documents are at issue, and convey that no relevant, unobjectionable information or documents are being withheld.  *See, e.g., Exhibit M, Interrogatory Nos. 1, 3, 7, 10; Request for Production Nos. 1, 3, 9.*

Defendant contends that the section of its discovery responses labeled "General Objections" is proper and Defendant has not seen any binding precedent holding otherwise. In any event, even if the Court were to find that Defendant's "General Objections" are not properly asserted, the legal effect, and only result, of an improper objection is waiver of the objection by Defendant or the Court's overruling of the objection.  *See e.g. Johnson v. Kraft Foods North America, Inc*., 238 F.R.D. 648, 651 (D. Kan. 2006)(waiving general objections); *Chavez v. Mercantil Commercebank, N.A.,* 2011 WL 1135005, *2 (S.D. Fla. March 28, 2011)(overruling general objections).  Accordingly, Plaintiff's Motion regarding Defendant's "General Objections" is misplaced as there is no discovery or other information for the Court to compel.  The question of the propriety of Defendant's "General Objections" would have more appropriately been raised in a motion to strike.  Plaintiff's Motion with regard to Defendant's "General Objections" should be denied.

## II.     It is Proper to Object to a Discovery Request to the Extent that it is Objectionable.

Plaintiff claims that it was improper for Defendant to partially object to a number of Plaintiff's specific discovery requests and then respond to the request, notwithstanding the objection.  To the contrary, Fed. R. Civ. P. 33(b)(3) specifically states that, "[i]f the party

---

[7] Plaintiff also, for the first time in her Motion, takes issue with Defendant's responses containing partial objections followed by substantive answers.  This issue is addressed below in Section II.

upon whom interrogatories are served objects to the interrogatories, the reasons for the objection must be stated *and* the interrogatory must be answered to the extent the interrogatory is not objectionable." (emphasis added).  *See Schipper v. BNSF Ry. Co.,* No. 2:07-cv-02249, 2008 WL 2358748, at *1 (D. Kan. June 6, 2008) (stating that "previously [Rule 33] said that if an objection was asserted it would be in lieu of an answer . . . [however] the 1993 amendment provide[s] that the responding party must answer to the extent the interrogatory is not objectionable, despite the objection . . . Thus, a party may assert an objection and still respond to the interrogatory."); *Leisure Hospitality, Inc. v. Hunt Properties, Inc.*, 2010 WL 3522444, *3  (N.D. Okla. Sept. 8, 2010) ("A party may object *to some or all* of the requested discovery, but it must be clear whether the responding party is objecting or not and, if objecting, to what part of the request and on what specific grounds")(emphasis added); *see also Fed. R. Civ. P. 33 Advisory Committee's Notes (*1993 Amendments stating that "[i]f, for example, an interrogatory seeking information about numerous facilities or products is deemed objectionable, but an interrogatory seeking information about a lesser number of facilities or products would not have been objectionable, the interrogatory should be answered with respect to the latter even though an objection is raised as to the balance of the facilities or products.")

Likewise, Rule 34 governing document inspection and production includes the specific instruction that "[a]n objection to part of a request must specify the part and permit inspection of the rest."   Fed.R.Civ.P. 34(b)(2)(C); *see also Fed. R. Civ. P. 34 Advisory Committee's Notes* (1993 Amendments stating that "if a request for production is objectionable only in part, production should be afforded with respect to the unobjectionable

11

portions.")

The order in the *Mann v. Island Resorts Development* case cited by Plaintiff is distinguishable from the instant case for a number of reasons and, more importantly, is in relevant part founded on a 1964 case that is no longer good law. Without providing any specific examples of the offending responses, the *Mann* court relied on the case of *Meese v. Eaton Mfg.*, 35 F.R.D. 162, 166 (N.D. Ohio 1964), the only case the court could find on the subject, for the proposition that asserting a partial objection followed by a substantive answer to a discovery request is improper. As the court in S*chipper* recognized, however, the *Meese* case was decided in 1964 when Rule 33 specified that objections to an interrogatory would be asserted "in lieu of" an answer. *Schipper*, 2008 WL 2358748, at *1.

With all due respect to the *Mann* court, it is clear from the face of the rules and the accompanying Advisory Committee Notes, that Defendant's practice of asserting a partial objection followed by an answer to the unobjectionable part of a specific discovery requests is not only contemplated by the rules, but is demanded by them. If asserting a partial objection followed by a substantive response to the unobjectionable portion of a discovery request were improper, discovery would become a quagmire of delay and obstruction. If Defendant had proceeded as Plaintiff suggests in the Motion, Plaintiff would have received from Defendant nothing but objections to Interrogatories # 1, 3, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 19 and 20 and Requests to Produce #1, 2, 3, 5, 6, 8, 9, 12. Defendant fails to see how that path would facilitate the "broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation of his case." *Motion*, p.8 (citing *Fed. R. Civ. P. 26 Advisory Committee's Notes.)*

12

Due to the unclear, unspecific, unlimited in time, and unlimited in geographic scope nature of many of Plaintiff's discovery requests, Defendant found it necessary to qualify its discovery responses by subjecting them to partial objections,[8] but Defendant also complied with its obligation to answer the unobjectionable portions of Plaintiff's requests.[9] Defendant's partial responses described and/or agreed to produce the responsive and unobjectionable documents and information that would satisfy Plaintiff's requests. In fact, notwithstanding the objections, Defendant took great care to respond to each request as comprehensively as possible, many times providing responses that were several paragraphs, and even several pages, in length.  *See, e.g. Exhibit M, Interrogatory Nos. 5, 7, 8, & 14.*

It is also important to note that, to date, Plaintiff continues to refuse to instruct

---

[8] For example, Defendant asserted objections to Plaintiff's requests that were unlimited in time and geographic scope. Employment discrimination and retaliation plaintiffs are not typically permitted unlimited discovery dating back several years prior to the alleged discrimination or retaliation. *See, e.g., Chatman v. National Railroad Passenger Corp., 246* F.R.D. 695, 697-98 (M.D. Fla. 2007). Likewise, employment discrimination and retaliation plaintiffs are not typically permitted company-wide discovery; instead, they are limited to site-specific or employing unit discovery. *See, e.g., Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1084-85 (11th Cir. 1990). Of course, issues such as the relevant time period and geographic scope of discovery are topics that Defendant would have expected to be able to reach an agreement on in its requested conversations with Plaintiff. In the undersigned counsel's experience, it is common, reasonable, and expected that the parties in employment discrimination and retaliation cases will meet and confer to come to an agreement on the proper scope of discovery. Plaintiff's counsel in this case has not, as of yet, afforded that opportunity.

[9] For example, Plaintiff's Request for Production #3 requested "any and all documents related or referring in any way to Plaintiff." Obviously, Defendant possesses some documents "related or referring in any way to" Plaintiff, the majority of those documents are contained in Plaintiff's personnel file, and the request is, therefore, partially  unobjectionable. To respond to such an unlimited request without asserting a partial objection, however, would, in essence, mislead Plaintiff into thinking that Defendant was obligated to, and was able to, locate every single document that existed throughout the company, locally and nationwide, regardless of when it was created or where it was stored, that may relate or refer to Plaintiff, and irrespective of its relevance to the claims and defenses in the case. The Federal Rules of Civil Procedure do not require such a response. *See Great Lakes Transp. Holding LLC v. Yellow Cab Service Corp*., 2010 WL 5093746, *6 (S.D. Fla. Dec. 8, 2010) (quoting *Sonnino v. Univ. of Kan. Hosp. Auth*., 2004 WL 764085, *5 (D.Kan. Apr. 8, 2004), which held that a request for production seeking "all documents that relate to or concern" a particular topic was "overly broad on its face"); *Parrot, Inc. v. Nicestuff Distributing Intern., Inc.*, 2009 WL 197979, *7 (S.D. Fla. Jan. 26, 2009) (request was impermissibly broad to the extent that it sought "all documents relating thereto.")

13

Defendant regarding whether Plaintiff will inspect Defendant's documents or will pay for Defendant to provide copies of the documents.   As of the date Defendant is filing the instant Response in Opposition to the Motion, Plaintiff has not reviewed Defendant's document production.  Had Plaintiff been willing to review Defendant's discovery and discuss the same with Defendant's counsel prior to filing the Motion, Plaintiff would likely have obtained the clarity she seeks in her Motion.

Neither the Rules of Civil Procedure nor any binding case law prohibits the assertion of a partial objection followed by a substantive answer to the unobjectionable portion of the request.  As a result, Plaintiff's Motion should be denied.

## III.      Defendant Properly Responded to RFP #8

Plaintiff also takes issue with Defendant's objection to RFP #8 wherein Plaintiff requested "all statements, affidavits, correspondence, and/or documents provided by the Defendant (and/or its agents, managers and/or employees) to the FCHR and/or EEOC." Defendant asserted an objection that, it should be obvious to all, contained a scrivener's error.[10]  More importantly, though, notwithstanding the objection, Defendant agreed to produce *all* documents Defendant provided to the FCHR, did not indicate that Defendant will withhold any documents, and, in the document production that currently awaits Plaintiff's instruction, did not, in fact, withhold any documents.  Had Plaintiff taken time to review Defendant's document production and to discuss the matter with Defendant as requested, she would have discovered that Defendant's mistakenly asserted objection did not at all impact

---

[10] Defendant specifically stated that, "Defendant objects to this request as it is unduly burdensome to the extent that it seeks lengthy descriptions of documents, and because it seeks information more readily obtainable from another source.  Notwithstanding the foregoing objections, Defendant will produce <u>all</u> documents responsive to this request at a mutually agreeable time and place. *Exhibit M, Request for Production # 8* (emphasis added).

PD.5061266.1

Defendant's production of the documents requested.  With regard to RFP #8, there is nothing for the Court to compel, save perhaps for Plaintiff's decision regarding her inspection or copying of Defendant's document production.

**IV.     Defendant Has Not Waived its Attorney-Client or Work Product Objections.**

Lastly, Plaintiff argues that Defendant has waived its attorney-client and work product objections based on a two-week delay in providing Plaintiff with Defendant's privilege log.  Following Defendant's March 28, 2011 service of its responses to Plaintiff's requests, the first communication Defendant received from Plaintiff regarding the documents Defendant agreed to produce, and regarding Defendant's privilege log, was on April 5, 2011.  *Exhibit A.*  In the normal course of discovery, Defendant prepared its privilege log along with the documents it agreed to produce in response to Plaintiff's requests and Defendant advised Plaintiff that this was the case.  *Exhibit B.*  Plaintiff did not at that time, or any time prior to filing the Motion, assert that Defendant's short delay in providing its privilege log caused Plaintiff any prejudice or that Plaintiff would move to compel the log.  Instead, Plaintiff filed the Motion erroneously informing the court that Defendant failed to produce its privilege log, implying that Defendant refused to produce the log, and representing that Defendant failed to respond to two requests regarding the privilege log.  All of these representations are patently false.

In light of the approximately six months that remain in the discovery period in this case, and because Plaintiff has refused to inspect or request copies of Defendant's document production, Plaintiff's request that the Court strike and/or deem as waived Defendant's timely-asserted privilege and work product objections based on a two-week delay in

provision of the log is unreasonable and not supported by the relevant case law.

It is well-settled that a party's failure to provide a privilege log contemporaneously with its responses to requests for production does not result in an automatic waiver of attorney-client or work product objections. *See, e.g., Pensacola Firefighters' Relief Pension Fund Bd. Of Trustees, v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 265 F.R.D. 589, 592-93 (N.D. Fla. 2010) (citing the case of *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.,* 230 F.R.D. 688, 695 (M.D. Fla. 2005), which adopted the Ninth Circuit's "holistic" approach to determining whether waiver has occurred); *Pitts v. Francis,* 2008 WL 2229524, at *4 (N.D. Fla. May 28, 2008) ("Failure to provide a privilege log does not result in an automatic waiver of the privilege"). The "holistic approach" to analyzing a potential waiver established by the Ninth Circuit, and followed by this Court, requires a case-by-case review of several factors including, *inter alia*, whether the privilege objection was made in a timely fashion and the timeliness of service of the privilege log. *See, e.g., Pensacola Firefighters',* 265 F.R.D. at 593. As the Ninth Circuit stated, the holistic approach is intended to "forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." *Burlington N. & Santa Fe Ry. Co. v. United States District Court for the District of Montana,,* 408 F.3d 1142, 1149 (9th Cir. 2005).

Here, neither "needless waste of time" nor "tactical manipulation" of the discovery rules is at issue. Defendant timely asserted its attorney-client and work product objections in its responses to Plaintiff's discovery requests and, after reviewing Plaintiff's Motion, immediately provided Plaintiff with its privilege log approximately two weeks following service of the responses. There are <u>no</u> Eleventh Circuit, Northern District, or any other

federal court cases applying the "holistic" analysis in which any court has found a waiver based on a two-week delay in providing a privilege log.

Moreover, the Court need not even apply the "holistic" factors in this case because Defendant provided its privilege log as soon as Plaintiff notified Defendant – via the Motion – that provision of the log was an issue.  Although Defendant recognizes that it is not Plaintiff's burden to demand a privilege log, in response to Plaintiff's inquiries, Defendant clearly communicated to Plaintiff that its privilege log was ready and would accompany Defendant's document production.  In the absence of any protest by Plaintiff, Defendant was under the impression that service of Defendant's privilege log along with Defendant's document production was acceptable to Plaintiff and, in any event, it seemed reasonable to await Plaintiff's instruction regarding Defendant's document production prior to transmitting Defendant's privilege log and the documents.  Defendant in no way attempted to delay or frustrate Plaintiff's ability to review Defendant's privilege log, nor did Defendant refuse to produce it.

Given the short delay in transmitting the privilege log in this case, and Plaintiff's refusal to instruct Defendant regarding document production, there is no basis for a finding that Defendant waived its attorney-client or work product objections.

## VI.     Defendant, Not Plaintiff, is Entitled to Recover Its Expenses for Time Spent Opposing This Motion

Plaintiff prematurely filed her Motion without engaging in a good faith attempt to confer to resolve the dispute, which, at the very least, would have involved having a conversation with Defendant and reviewing the documents Defendant agreed to produce. *See, L.R. 7.1(B); see also, e.g., Royal Bahamian Ass'n Inc. v. QBE Ins. Corp.,* 744 F. Supp.

2d 1297, 1299, FN2 (S.D. Fla. 2010) ("Sending an email and demanding an immediate or near-immediate response and then filing a motion before having an actual substantive discussion with opposing counsel does not amount to a conference or consultation.").

Rule 37(a)(5) of the Federal Rules of Civil Procedure provides as follows, in pertinent part:

> **(5)** *Payment of Expenses; Protective Orders.*
>
> **(A)** *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> **(iii)** other circumstances make an award of expenses unjust.
>
> **(B)** *If the Motion Is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26 (c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the curt must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Similarly, this Court's Initial Scheduling Order mandate that "the Court will ordinarily award counsel fees for time spent in filing (and arguing) a motion to compel *if such a motion is*

*necessary to make a recalcitrant party respond*, or for time spent *opposing* (and arguing) such a motion that is found to be unnecessary and without basis. *Dkt. 10.* The Initial Scheduling Order also *specifically* requires that "[c]ounsel should attempt to resolve discovery controversies without the Court's intervention.  The Court will entertain a motion with respect to matters which remain in controversy only if, after consultation and sincere attempts to resolve differences, counsel are unable to reach an accord." *Dkt. 10, p.5, ¶8.*

"[D]iscovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Devaney v. Continental Amer. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  In *Armor Screen Corp. v. Storm Catcher, Inc.*, 2009 WL 1871685, * 4 (S.D. Fla. June 29, 2009), the court identified several reasons, all of which are strikingly similar to the facts in this case, why the defendants' motion to compel was not substantially justified: (1) the defendants conceded that they did not avail themselves of an opportunity to review certain computer files at issue, "which may very well have obviated the need for the motion to compel;" (2) plaintiff had already produced documents requested before the motion to compel was filed, and "[c]ertainly, such discussion [regarding the documents] would likely have resolved this issue;" and (3) the Court was troubled by the "lack of effort by the defendants to meet and confer with plaintiff in good faith regarding issues raised in the motion to compel before it was filed."  *Id.*  Finally, the court held that defendant's actions "undermine[d] the purpose and effectiveness of the meet and confer requirement and the Court considers such action an additional reason for finding that the motion was not in response to a genuine dispute."  *Id.*

With regard to the "good faith" requirement of Rule 37, federal courts consistently hold that "good faith" involves more than curt and unproductive email correspondence between counsel.  The opinion in *Hughes v. State Farm Fire & Casualty Co.,* 2003 WL 23220577, *2, FN2 (S.D. Ala. Nov. 3, 2003), is particularly instructive.  In *Hughes*, the district court provided guidance on the "good faith" conferral requirement, stating that "[i]n this context, confer means 'to have a conference; compare and exchange ideas; meet for discussion; converse.'  *Webster's New World Dictionary (College Edition, 1968).*  A conference is '[a] meeting of several persons for deliberation, for the interchange of opinion, or for the removal of differences or disputes.' *Black's Law Dictionary, Rev. 4th ed. (1968).* **Therefore, simply corresponding with opposing counsel is not considered a good-faith attempt to confer or have a conference to resolve discovery disputes."** *Hughes*, 2003 WL 23220577, at *2, FN2 (emphasis added); s*ee also Royal Bahamian Ass'n,* 744 F. Supp. 2d at 1299, FN2 (construing Fed.R.Civ.P 37 and local rules similar to the Northern District's, stating that "[i]n order to 'confer,' a movant must have a give-and-take exchange with opposing counsel. Sending an email and demanding an immediate or near immediate response and then filing a motion before having an actual substantive discussion with opposing counsel does not amount to a conference or consultation.  Instead, it is a one-way missive."); *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co,* No. 07-61879, 2008 WL 5427785, *1 (S.D. Fla. Dec. 30, 2008) ("Simply sending a letter without further follow-up does not constitute the type of effort to engage in a pre-filing conference anticipated by Local Rule 7.1"); *Williams v. Board of Cnty. Comm'rs,* 192 F.R.D. 698, 700 (D. Kan. 2000) (noting that under Federal Rule of Civil Procedure 37 and local rules a 'reasonable effort to confer

means more than mailing a letter to opposing counsel. It requires that counsel converse, confer, compare views, consult, and deliberate.").

> A. *Plaintiff Failed to Make a Sincere, Good Faith Effort to Resolve the Issues Raised in the Motion*

Plaintiff's Motion is a prime example of a motion that was "filed . . . before attempting in good faith to obtain the . . . discovery without court action" and was not necessary to make a "recalcitrant" party respond.  Plaintiff's Motion is "unnecessary and without basis."  Unlike Plaintiff, Defendant attempted on *four* separate occasions, once prior to the filing of Plaintiff's Motion and three times after the filing, to discuss the discovery issues with Plaintiff's counsel and even offered a substantial compromise in the hopes that the parties could reach an agreement and move on with productive discovery in this case. Plaintiff, however, stubbornly refused to engage in a meaningful dialogue with Defendant, instead sending terse and counterproductive email responses to Defendant's requests. Plaintiff's recalcitrance to discuss the discovery dispute prevented any opportunity to reach an agreement prior to relying on the Court for resolution of the dispute.

Moreover, in addition to *refusing* to meet and confer, Plaintiff made several misrepresentations to the Court *about Plaintiff's alleged efforts* to attempt in good faith to resolve the issues raised in the Motion.  Plaintiff never notified Defendant that Plaintiff considered Defendant's individual responses to Plaintiff's requests problematic, did not provide Defendant with the *Mann* discovery order on which Plaintiff bases her argument regarding Defendant's individual responses, and never notified Defendant of Plaintiff's intention to move to compel Defendant's privilege log or to argue that Defendant waived its privilege objections based on a two-week delay in providing the log.  In the April 8, 2011

communication notifying Defendant of Plaintiff's intention to file the Motion, Plaintiff's counsel stated only that, "I understand you have refused to withdraw your general objections and your objections to request to produce number 8. As such, I'll have to do a motion to compel." Plaintiff mentioned no other concerns.

Plaintiff's failure to engage in sincere efforts to resolve the dispute is contradictory to the requirements of Rule 37, the mandates of this Court, and the general spirit of professionalism and cooperation. Given Plaintiff's misrepresentations to the Court regarding her good faith attempts to resolve this matter and her complete and total unwillingness to discuss the discovery matters with Defendant before and after filing the Motion, Plaintiff's Motion should be denied and Plaintiff is clearly not entitled to recover her expenses incurred in connection with filing the Motion.[11] Fed.R.Civ.P. 37(a)(5)(A)(i).

Accordingly Defendant requests that this Court award Defendant its expenses, including fees, based on the needless time spent opposing Plaintiff's unnecessary and meritless Motion. *See Kelly v. Old Dominion Freight Line, Inc.*, 2010 WL 1676772, * 7 (11th Cir. April 27, 2010)(ordering employment discrimination plaintiff to pay attorneys' fees

---

[11] Contrary to Plaintiff's assertion, the *Mann* order did not contain an award of expenses or "sanctions;" instead, the court requested that the parties submit additional briefing on the issue. Moreover, the *Mann* plaintiff's offenses were a far cry from those which Plaintiff in the instant case alleges Defendant committed. For example, the *Mann* plaintiff failed to timely serve its discovery responses and, in responding to the defendant's motion to compel, misrepresented to the court that its discovery responses were served prior to the plaintiff's filing of its motion to compel. The *Mann* plaintiff's responses did not provide enough detail regarding what documents would be produced to permit the defendant's counsel to identify and locate them. Further, plaintiff's counsel required defendant's counsel to review five volumes of documents that contained no responsive information during the document inspection. Interestingly, prior to entry of the discovery order cited by Plaintiff, the court in the *Mann* case entered an "Order Concerning Discovery Disputes" in which the court admonished the parties to "exhaust every possibility of resolution" prior to "bringing a discovery dispute to the court" and, specifically ordered that the parties "shall be required to personally meet or to confer telephonically (i.e., no faxes, e-mails, or voice-mail messages back and forth) in a good-faith effort to resolve the dispute." *Mann v. Island Resorts Development, Inc.,* No. 3:08-cv-00297-RS-EMT, Order at p.2 (*Dkt. 202*)(N.D. Fla. February 9, 2009)(unpublished).

and costs incurred by defendant in opposing plaintiff's motions to compel was not an abuse of discretion; motions to compel were both meritless and failed to comply with the procedural rules, and the plaintiff failed to present any mitigating circumstances that would make the award of fees unjust);  *Hill v. Emory University*, 2009 WL 2599612, * 1 (11th Cir. Aug. 26, 2009)(Employer entitled to award of attorney fees upon denial of employee's motion to compel discovery, where plaintiff did not show that motion was substantially justified).

## <u>Conclusion</u>

WHEREFORE, Defendant respectfully requests this Court deny Plaintiff's Motion to Compel and for Sanctions and, instead, award Defendant the expenses it incurred in opposing Plaintiff's Motion and all other relief to which Defendant may be entitled at law or in equity.

Respectfully submitted,

s/Jolee Land
Jolee Land
  Florida Bar No. 0135860
  jolee.land@phelps.com
Kamilah Perry
  Fla. Bar No. 0597937
  kamilah.perry@phelps.com
PHELPS DUNBAR LLP
100 South Ashley Drive
Suite 1900
Tampa, Florida 33602-5311
(813) 472-7550
(813) 472-7570 (FAX)

Attorneys for Defendant

PD.5061266.1

## **CERTIFICATE OF SERVICE**

I  HEREBY CERTIFY that on April 25, 2011, a true and correct copy of the

foregoing was filed through the Court's CM/ECF system, which will electronically provide a

copy of same to counsel of record for Plaintiff.


s/Jolee Land
Attorney

PD.5061266.1